1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10  STEVE JOSEPH NOBLE, IV,

11              Petitioner,              No. CIV S-09-01221-MCE-DAD P

12        vs.

13  M. S. EVANS, Warden,

14              Respondent.              FINDINGS & RECOMMENDATIONS

15  _____/

16          Petitioner is a state prisoner currently incarcerated California State Prison -

17  Folsom and is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. §

18  2254.  Therein, petitioner alleges that in violation of his due process rights: (1) prison officials at

19  his prison disciplinary hearing failed to consider evidence that petitioner sought to introduce in

20  his defense; and (2) the California Department of Corrections and Rehabilitation (CDCR)

21  maintains false information in his central file.

22          Pending before the court is respondent's motion to dismiss the pending habeas

23  petition pursuant to Rule 4 of the Rules Governing § 2254 Cases.  Respondent argues that

24  petitioner's claim that the CDCR is maintaining false information in his central file is barred by

25  the statute of limitations set forth in 28 U.S.C. § 2244(d).  In addition, respondent moves to

26  dismiss on the grounds that petitioner has failed to state a prima facie claim for federal habeas

1

relief with respect to both of his claims.  Petitioner has filed written opposition.  For the reasons

stated below, the court recommends that respondent's motion to dismiss be granted.

## BACKGROUND

On August 11, 2000, petitioner was convicted in the Los Angeles County Superior

Court of grand theft from the person of another.  (Pet. at 2.)  Pursuant to that conviction,

petitioner was sentenced to an indeterminate term of 25 years to life imprisonment under

California's Three Strikes Law, California Penal Code § 1170.12.  (Id.)

On June 13, 2006, petitioner lodged an appeal with the CDCR, claiming that a

CDCR 128-6 Classification Chrono in his central file contained false and derogatory information.

(Pet., Ex. 17.)  Petitioner alleged that, contrary to the notations on the form appearing in his

central file, he had never been charged with "Oral Copulation with a Child under 14" nor had

such a charge against him been dismissed and/or reduced to a conviction for "Lewd and

Lascivious Acts with a Child under 14."  (Pet., Ex. 18.)  On June 21, 2006, the CDCR granted

petitioner's appeal and indicated that a corrected copy of the CDCR 128-6 Classification Chrono

would be forwarded to Deputy District Attorney Constance Picciano.  (Pet., Ex. 17.)

Shortly after the granting of his appeal, petitioner was the subject of a prison

disciplinary action.  On July 20, 2006, he was charged with a CDC-115 rules violation for

attempted battery on a peace officer, in violation of California Code of Regulations, title 15, §

3005(c).  (Pet., Ex. 14-15.)  At his hearing on that charge, petitioner was convicted of the offense

and sanctioned with:  (1) a 150 day forfeiture of good time credits; (2) fourteen unfavorable

behavior points; (3) a six month Security Housing Unit (SHU) term; (4) and transfer to High

Desert State Prison, a Level IV facility.  (Opp'n, Ex. A at 5.)  However, the forfeiture of time

credits was never assessed because the hearing did not take place within 30 days of the incident,

as required by California Code of Regulations, tit. 15, § 3320(f)(4).  (See Pet., Ex. 11.)

On April 20, 2007, petitioner filed a petition for writ of habeas corpus in the

Lassen County Superior Court, alleging that: (1) the CDCR failed to correct the false information

2

in his central file; and (2) the CDCR must reconsider his disciplinary conviction because the hearing on the charge was procedurally deficient.  (Resp't's Mot. to Dismiss (MTD), Ex. 1.) That habeas petition was denied in a reasoned order filed May 8, 2007.  (Id.)  Petitioner filed a subsequent habeas petition in the California Court of Appeal for the Third Appellate District. (Opp'n, Ex. B.)  The California Court of Appeal summarily denied that petition on October 18, 2007.  (Pet., Ex. 26.)

While the petition for habeas relief was pending before the California Court of Appeal, the prison disciplinary charge against petitioner was reheard on July 31, 2007 and petitioner was once again found guilty.  (Pet., Ex. 9-11.)  On April 18, 2008, petitioner challenged the second disciplinary hearing in a petition for writ of habeas corpus filed in the Sacramento County Superior Court.  (Pet., Ex. 30.)  Therein, petitioner alleged that the second disciplinary hearing violated his due process rights because he was not allowed to call witnesses or submit evidence.  (See Pet., Ex. 31.)  That petition was transferred to the Kern County Superior Court and denied in a reasoned order on July 31, 2008.  (Pet., Ex. 28-31.)  Petitioner filed a subsequent habeas petition raising the same claim in the California Court of Appeal for the Fifth Appellate District, which was summarily denied on September 11, 2008.  (Pet., Ex. 33.)

On February 27, 2009, petitioner consolidated his claims and filed a petition for writ of habeas corpus in the California Supreme Court.  (MTD, Ex. 3.)  Therein, petitioner alleged violations of his due process rights because: (1) the second disciplinary hearing on July 31, 2007 did not meet the minimum requirements of procedural due process; and (2) the CDCR had failed to correct the false information in his central file.  (Id.)  That petition was summarily denied on March 18, 2009.  (Pet., Ex. 34.)

On April 7, 2009, petitioner filed his federal petition for writ of habeas corpus, alleging the same claims that he presented to the California Supreme Court.  On July 20, 2009, respondent filed the pending motion to dismiss.  Petitioner filed an opposition to that motion on August 14, 2009.

**STANDARDS APPLICABLE TO THE MOTION TO DISMISS**

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ."  Rule 4, Rules Governing Section 2254 Cases.  See White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (meritorious motions to dismiss are permitted under Rule 4); Gutierrez v. Griggs, 695 F.2d 1195, 1198 (9th Cir. 1983) (Rule 4 "explicitly allows a district court to dismiss summarily the petition on the merits when no claim for relief is stated); Vargas v. Adler, No. 1:08-cv-01592 YNP [DLB] (HC), 2010 WL 703211, at *2 (E.D. Cal. Feb. 25, 2010) (granting motion to dismiss a habeas claim for failure to state a cognizable federal claim).  Moreover, the Advisory Committee Notes to Rule 8 of the Rules Governing Section 2254 Cases indicates that the court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed.  See, e.g., Miles v. Schwarzenegger, No. CIV S-07-1360 LKK EFB P, 2008 WL 3244143, at *1 (E.D. Cal. Aug. 7, 2008) (dismissing habeas petition pursuant to respondent's motion to dismiss for failure to state a claim).  However, a petition for writ of habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted.  Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).

**ANALYSIS**

I.  Statute of Limitations

Respondent contends that petitioner's claim that the CDCR is maintaining false information regarding his criminal history in his central file is time-barred under the Antiterrorism Effective Death Penalty Act's (AEDPA) one-year statute of limitations.  (MTD at 3.)  Petitioner counters that the claim was presented in a timely manner because he pursued his claim diligently and is therefore entitled to statutory tolling of the statute of limitations for the sixteen month period between the California Court of Appeal's denial of his habeas petition and

1   the filing of his subsequent habeas petition in the California Supreme Court .  (See Opp'n at 11.)

2           Because AEDPA's statute of limitations is not jurisdictional, see Green v. White,

3   223 F.3d 1001, 1003-04 (9th Cir. 2000), the court elects to proceed to the merits of respondent's

4   motion to dismiss the petition for failure to state a claim.  Day v. McDonough, 547 U.S. 198, 199

5   (2006) ("[T]he court holds that a district court has discretion to decide whether the

6   administration of justice is better served by dismissing the case on statute of limitations grounds

7   or by reaching the merits of the petition."); Bruno v. Director, CDCR, No. CIV S-02-2339 LKK

8   EFB P, 2010 WL 367538, at *2 (E.D. Cal. Jan. 26, 2010) ("[T]he court elects to deny petitioner's

9   habeas petition on the merits rather than reach the equitable tolling issue.")[1]

10  II.  Failure to State a Prima Facie Claim for Relief

11          Respondent also contends that petitioner has failed to state a prima facie claim for

12  federal habeas relief with respect to both of his claims.  (MTD at 2.)  Specifically, respondent

13  argues that petitioner's challenge to his July 31, 2007, disciplinary hearing does not affect the

14  fact or duration of his confinement, and therefore this court lacks jurisdiction to consider such a

15

16          [1] The court notes that petitioner's claim of false information in his central file was set
    forth in the habeas petition that was summarily denied by the California Court of Appeals for the
17  Third Appellate District on October 18, 2007.  (Pet., Ex. 26.)  The claim was not presented to the
    California Supreme Court until over sixteen months later when, on February 27, 2009, petitioner
18  consolidated the habeas claims he had presented to the state appellate courts and filed a habeas
    petition in the California Supreme Court.  (MTD, Ex. 3.)  However, petitioner argues that he
19  pursued habeas relief diligently and delayed in presenting this claim to the California Supreme
    Court only to comply with his understanding of the state law requirement that he present all
20  claims for habeas relief to the California Supreme Court in a single petition.  The sixteen month
    delay is therefore not unexplained and the answer to the question of whether petitioner would be
21  entitled to statutory tolling for the entire period is far from obvious.  See Bui v. Hedgpeth, 516 F.
    Supp. 2d 1170, 1174-76 (C.D. Cal. 2007) (83-day delay to conduct additional research and 158-
22  day delay due to difficulties in obtaining photocopies properly tolled); Roeung v. Felker, 484 F.
    Supp. 2d 1081, 1084-85 (C.D. Cal. 2007) (six-month delay to conduct further research and
23  expand petition properly tolled); Haynes v. Carey, No. Civ. S-07-0484 LKK DAD P, 2007 WL
    3046008, *3-*5 & n.3 (E.D. Cal. Oct. 18, 2007) (170-day gap between denial of relief and filing
24  of next petition was explained by prison law library closures and access limited by lock downs,
    staff meetings, schedule irregularities and therefore was subject to tolling); Burke v. Campbell,
25  No. Civ. S-06-0459 FCD DAD P, 2006 WL 3589510 (E.D. Cal. Dec. 11, 2006) (significant
    delays explained by limited prison law library access, complexity of legal issues to be raised,
26  serious medical conditions and other legal actions against which petitioner was forced to defend
    properly subject to tolling where respondent failed to rebut the explanations).

1  claim in this habeas action.  (See id.)  Regarding petitioner's claim that his central file continues

2  to contain false information regarding his criminal record, respondent argues that federal habeas

3  relief is unavailable to petitioner because he has failed to demonstrate that he has a liberty

4  interest in an accurate prison central file.  (MTD at 3.)

5        A.  Prison Disciplinary Hearing

6        Petitioner alleges that his second prison disciplinary hearing held on July 31,

7  2007, did not afford him an opportunity to introduce witnesses, present evidence, or speak on his

8  own behalf.  (Pet. at 6-6(a).)  Petitioner claims that he is therefore being subject to disciplinary

9  sanctions and other "collateral consequences" in violation of his due process rights.  (See Opp'n

10  at 4-6.)  According to petitioner, these collateral consequences include:  (1) confinement at a high

11  level security facility; (2) reduction in work privileges; (3) retaliation by prison officials; and (4)

12  the possibility of losing parole.  (See id.; see also MTD Ex., 1 at I-III.)

13        As noted above, respondent argues that federal habeas corpus relief is not

14  available to petitioner with respect to this claim because the challenged disciplinary conviction

15  does not affect the fact or duration of his confinement.  The court agrees.

16        "Federal law opens two main avenues to relief on complaints related to

17  imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil

18  Rights Act . . . 42 U.S.C. § 1983.  Challenges to the validity of any confinement or to particulars

19  affecting its duration are the province of habeas corpus."  Hill v. McDonough, 547 U.S. 573, 579

20  (2006) (quoting Muhammad v. Close, 540 U.S. 749, 750 (2004)).  Therefore, the sole remedy for

21  a prisoner seeking the restoration of good time credits taken from him as a result of a disciplinary

22  conviction hearing is a writ of habeas corpus.  Edwards v. Balisok, 520 U.S. 641, 644 (1997);

23  Nonnette v. Small, 316 F.3d 872, 875 (9th Cir. 2002) ("It has been clear for over thirty years that

24  a state prisoner seeking injunctive relief against the denial or revocation of good-time credits

25  must proceed in habeas corpus, and not under § 1983.")  On the other hand, where as here a

26  prison disciplinary conviction does not result in the loss of time credits either because those time-

credits were restored or never forfeited in the first place, habeas jurisdiction is lacking.  See

Medina v. M.D. McDonald, et al., No. CIV-08-0352 JAM EFB P, 2010 WL 341389, at * 1 (E.D.

Cal. Jan 22, 2010) (granting respondents' motion to dismiss habeas petition where petitioner

challenged a prison disciplinary hearing but all of his lost credits had been restored); Mason v.

Povey, No. 1:08-cv-00954-LJO-DLB (HC), 2009 WL 817850, at * 3 (E.D. Cal. Mar. 26, 2009)

(finding that because petitioner was challenging a prison disciplinary action that did not result in

a loss of time credits and therefore did not effect the duration of his confinement, the challenge

was more appropriately raised in a § 1983 action); McKines v. Norwood, No. CV 08-4993-GHK

(CT), 2008 WL 4808641, at * 2-3 (C.D. Cal. Oct. 26, 2008) (concluding that where a prisoner

challenges disciplinary proceedings that resulted only in administrative segregation and

additional non-custodial sanctions, under the holding in Ramirez v. Galaza, his claims are not

cognizable on habeas review); see also Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991)

("[H]abeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality

or duration' of confinement.  A civil rights action, in contrast, is the proper method of

challenging conditions of confinement.").

> As the Ninth Circuit has explained:
>
> Our own precedents have more directly addressed the interplay
> between § 1983 and habeas . . . and are somewhat illuminating
> with regard to the reach of habeas jurisdiction over . . . prisoner
> suits.  In Bostic v. Carlson, 884 F.2d 1267 (9th Cir. 1989), for
> example, we held that "[h]abeas corpus jurisdiction . . . exists
> when a petitioner seeks expungement of a disciplinary finding from
> his record if expungement is *likely* to accelerate the prisoner's
> eligibility for parole." Id. at 1269 (citing McCollum v. Miller, 695
> F.2d 1044, 1047 (7th Cir. 1982) (emphasis added).  As we recently
> explained, "*Bostic thus holds that the likelihood of the effect on the
> overall length of the prisoner's sentence . . . determines the
> availability of habeas corpus*." Ramirez v. Galaza, 334 F.3d 850,
> 858 (9th Cir. 2003) (emphasis added), cert. denied, 541 U.S. 1063
> (2004)  (parallel citations omitted).

Docken v. Chase, 393 F.3d 1024, 1028 (9th Cir. 2004).

/////

7

1            Here, the duration of petitioner's confinement was not affected by his conviction

2  on the disciplinary charge.  As noted, petitioner did not lose any good time credits as a result

3  thereof.  (Pet., Ex. 11.)  The 150 day forfeiture of credits, which was initially assessed against

4  him, was never imposed because petitioner's disciplinary hearing did not take place within thirty

5  days of the reported rules violation, as required by the California Code of Regulations, tit. 15, §

6  3320(f)(4).  (See id.)  Thus, even if petitioner were successful in challenging the disciplinary

7  hearing on procedural due process grounds, he "will not necessarily shorten the length of his

8  confinement because there has been no showing . . . that the expungement [petitioner] seeks is

9  likely to accelerate his eligibility for parole."  Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir.

10  2003), cert. denied, 541 U.S. 1063 (2004) .

11            It would be speculative to argue in this case that the challenged disciplinary

12  conviction will defeat petitioner's future prospects for parole.  See Wilson v. Terhune, 319 F.3d

13  477, 482 (9th Cir. 2003) (rejecting petitioner's argument that a prison disciplinary conviction

14  would provide the basis for the denial of parole).  That is particularly true here where petitioner

15  has served less than ten years on his twenty-five year to life prison sentence.[2]

16            Therefore, petitioner's claim that he was denied procedural due process at his

17  second disciplinary hearing is not cognizable on federal habeas review.  Rather, to the extent

18

19        [2]  Under California's parole scheme, a prison disciplinary action is only one of many circumstances that the Board of Prison Hearings (Board) considers in deciding whether a

20  prisoner is suitable for parole.  Cal. Code Regs., tit. 15, § 2281(c) & (d).  Petitioner will have the opportunity to explain any disciplinary convictions he has suffered while imprisoned at his parole

21  suitability hearing, see Cal. Code Regs., tit. 15, § 2249, and the Board will have discretion as to how much importance, if any, to attach to any disputed disciplinary conviction.  Cal. Code Regs.,

22  tit. 15, § 2281(c).  Finally, petitioner does not allege any circumstance that would lead this court to conclude that the disciplinary conviction he seeks to challenge here would necessarily cause

23  him to be denied release on parole.  Cf. Noor v. Martell, No. CIV S-08-1656 WBS JFM P, 2009 WL 1942895, at *8-11 (E.D. Cal. July 2, 2009) (finding that the challenged disciplinary

24  conviction would defeat parole because the parole board had explicitly warned petitioner in the past that another disciplinary action would adversely and unequivocally affect his chances of

25  obtaining his release on parole); Murphy v. CDCR, No. C 06-04956 MHP, 2008 WL 111226, at *7 (N.D. Cal. Jan.9, 2008) (finding in that case that the expungement of petitioner's disciplinary

26  conviction would make it more likely that he would be granted parole, thus making the claim one appropriately considered in a habeas proceeding.

1  petitioner seeks to challenge the disciplinary hearing or any sanction that resulted therefrom, a

2  civil rights action brought under § 1983 is his only available avenue by which to seek relief.[3]  See

3  Burnsworth v. Gunderson, 179 F.3d 771, 775 (9th Cir. 1999) (expunging a disciplinary

4  conviction in a § 1983 action where there was no evidence presented at the hearing to support the

5  conviction).  Accordingly, this claim for federal habeas relief should be dismissed without

6  prejudice.

7      B.  Expungement of False Information

8      Petitioner also claims that the CDCR is maintaining false information regarding

9  his criminal history in his central prison file in violation of his due process rights.  (Pet. at 7.)  In

10 this regard, petitioner alleges that, contrary to the notations in his central file, he has never been

11 arrested for, convicted of, or had dismissed a charge of "Oral Copulation with a Child under 14."

12 (Id.)  Petitioner requests that the court expunge the erroneous information from his prison central

13 file.  (See id.)

14     The Due Process Clause of the Fourteenth Amendment prohibits state action that

15 deprives a person of life, liberty, or property without due process of law.  One alleging a due

16 process violation must first demonstrate that he was deprived of a liberty or property interest

17 protected by the Due Process Clause and then show that the procedures attendant upon the

18 deprivation were not constitutionally sufficient.  Ky. Dep't of Corr. v. Thompson, 490 U.S. 454,

19 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

20 /////

21 /////

22 /////

23

24     [3]  The court notes that petitioner has already filed a civil rights action seeking damages in
connection with the imposition of disciplinary sanctions against him stemming from the July 31,
25 2007 prison disciplinary hearing.  Plaintiff filed that civil rights complaint, alleging that his right
to due process was violated at the prison disciplinary hearing in question, in the Fresno Division
26 of this court.  See Noble v. Gonzalez, Case No. 07-cv-0111-LJO-GSA P.  According to court
records, that action is still pending.

1           Courts have been divided as to whether a prisoner has a protected liberty interest

2  in an accurate prison file.[4]   The Fourth Circuit has previously recognized a limited liberty interest

3  secured by the Constitution in having false information expunged from one's prison file.  See

4  Paine v. Baker, 595 F.2d 197, 201-02 (4th Cir. 1979).  Under the decision in Paine, a prisoner

5  was entitled to relief if he could show that: (1) the information in question was actually false; (2)

6  the erroneous information was in his central file; and (3) the erroneous information was likely to

7  be relied upon "to a constitutionally significant degree."  Id.

8           However, following the United States Supreme Court's decision in Greenholz v.

9  Inmates of Nebraska Penal, 442 U.S. 1 (1979), the validity of Paine has been called into question.

10  See Johnson v. Rodriguez, 110 F.3d 299, 309 n.13 (5th Cir. 1997) ("[A]lthough Paine has not

11  been expressly overruled, subsequent Fourth Circuit cases . . . undercut any contention that the

12  Paine analysis is still viable.").  In Greenholz, the Supreme Court held that the U.S. Constitution,

13  of its own force, does not create a liberty interest in parole.[5]  442 U.S. at 7.  See also Jago v. Van

14  Curen, 454 U.S. 14, 17-21 (1981)  Thus, as the Fifth Circuit explained in Johnson, a prisoner

15  who does not have a liberty interest in parole under the United States Constitution cannot

16  legitimately expect the procedures relating to the grant of parole, including the maintenance of

17  accurate prison files, to be protected by the Due Process Clause.  Johnson, 110 F.3d at 309 n.13.

18  "The protections of the Due Process Clause are only invoked when State procedures . . . imperil a

19  protected liberty or property interest."  Id. at 308; see also O'Kelley v. Snow, 53 F.3d. 319, 321

20  (11th Cir. 1995) ("[U]nless there is a liberty interest in parole, the procedures followed in making

21

22        [4]  The Ninth Circuit itself has refrained from addressing the issue as to whether there is a
constitutional due process right in an accurate prison file.  See Hernandez v. Johnson, 833 F.2d

23  1316, 1319 (9th Cir. 1987) ("Because Washington law provides a liberty interest in accurate
prison record information in the proper case, we do not reach the question of whether in the

24  absence of the statute, such right is 'grounded in the due process clause' itself.).

25        [5]  The Court also held that a state's statutory scheme could give rise to a cognizable
liberty interest in parole if the statutes used mandatory language and created a legitimate

26  expectation of release.  See Greenholz, 442 U.S. at 12; see also Bd. of Pardons v. Allen, 482 U.S.
369, 372-81 (1987); McQuillion v. Duncan, 306 F.3d 891, 900 (9th Cir. 2002) (McQuillion I).

1  a parole determination are not required to comport with standards of fundamental fairness.").

2        However, California's statutory scheme does give rise to a cognizable liberty

3  interest in release on parole.  Sass v. Cal. Bd. Of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.

4  2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion I, 306 F.3d at 903; see

5  also In re Lawrence, 44  Cal. 4th 1181, 1204, 1210, 1221 (2008).  Accordingly, this court

6  concludes that the  Paine analysis is still viable, although subsequently modified by the Supreme

7  Court's decision in Sandin v. Connor, 515 U.S. 472 (1995).  See Edwards v. Marshall, No. CIV

8  F-03-6233 AWI WMW HC, 2006 WL 845645, at *2-3 (E.D. Cal. July 24, 2006).

9        In Sandin, a prisoner sought removal of a misconduct charge from his prison

10  record on the grounds that his due process rights were violated during the disciplinary hearing on

11  the charge.  515 U.S. at 475-77.  The Court held that a liberty interest implicating the Due

12  Process Clause only exists where the prisoner can demonstrate that the State action would

13  "inevitably affect the duration of his sentence" or impose "an atypical and significant hardship on

14  the inmate in relation to the ordinary incidents of prison life."  Id. at 484, 487.  Because the

15  misconduct charge at issue would not invariably defeat his release on parole, the Court concluded

16  that the prisoner could not invoke the protections of the Due Process Clause.  Id. at 487.

17  Accordingly, after Sandin, a prisoner has a liberty interest in the accuracy of his central file only

18  if the erroneous information "inevitably affects the duration of his sentence."  Morales v. Rubia,

19  No. 2:07-cv-00826 RSL JLW, 2009 WL 2474743, at *24 (E.D. Cal. Aug. 11, 2009).  See also

20  Rio v. Schwarzenegger, No. EDCV 09-214-TLJ (MAN), 2009 WL 1657438, *6 (C.D. Cal. June

21  10, 2009) ("[A]fter Sandin, an inmate seeking to expunge erroneous information from his file

22  under the Due Process Clause 'must show that the false information will inevitably lengthen the

23  duration of the inmate's incarceration.'"); Jacobs v. Sullivan, No, 1:05-cv-01625-AWI-WMW

24  (PC), 2009 WL 1211390, at *7 (E.D. Cal. May 1, 2009) (dismissing civil rights complaint which

25  sought expungement of plaintiff's prison record because "[a]ny concern that the information will

26  be used against Plaintiff in the future is premature."); Ellington v. Director of Corrections, No.

1   1:09-cv-00054-DLB PC, 2009 WL 900168, at *6 (E.D. Cal. Mar. 31, 2009) (same); Edwards,

2   2006 WL 845645, at *3 (denying relief with respect to an expungement claim raised in a habeas

3   action).

4           That high standard cannot be met here.  Petitioner seeks to expunge from his

5   central file the reference in a CDCR 128-6 form indicating that he had been charged with "Oral

6   Copulation with a Child under 14" and that the charge was dismissed.  (See Pet. at 7; Pet., Ex.

7   16.)  Even if the court assumes that this information is false and is still present in petitioner's

8   central file, as he alleges, the court cannot conclude that reference to a dismissed criminal charge

9   in petitioner's central file will "inevitably [lengthen] the duration of his sentence."  Sandin, 515

10  U.S. at 484.  See also Morales, 2009 WL 2474743, at *24.  As explained above, the Parole

11  Board's decision as to whether a prisoner is suitable for parole "rests on a myriad of

12  considerations."  Id. at 487.  In this regard, the Board is to consider:

13
        All relevant, *reliable* information . . . .  Such information shall
        include the circumstances of the prisoner's: social history; past and
14          present mental state; past criminal history, including involvement
        in other criminal misconduct which is *reliably* documented; the
15          base and other commitment offenses, including behavior before,
        during and after the crime; past and present attitude toward the
16          crime; any conditions of treatment or control, including the use of
        special conditions under which the prisoner may safely be released
17          to the community; and any other information which bears on the
        prisoner's suitability for release. Circumstances which taken alone
18          may not firmly establish unsuitability for parole may contribute to
        a pattern which results in a finding of unsuitability.
19

20  Cal. Code Regs., tit. 15, § 2281(b) (emphasis added).  Petitioner will be afforded "procedural

21  protections at his parole hearing in order to explain the circumstance[s]" behind any disputed

22  information.  Sandin, 515 U.S. at 487.  See also Cal. Code Regs., tit. 15, § 2249.  Therefore, the

23  chance that the allegedly erroneous reference in petitioner's central file to a dismissed criminal

24  charge will alter the balance at petitioner's parole hearing is "simply too attenuated to invoke the

25  procedural guarantees of the Due Process Clause."  Sandin, 515 U.S. at 487.  See Morales, 2009

26  WL 2474743, at *20-26 (finding that false information in an unsigned probation report would not

1  inevitably lengthen petitioner's sentence); see also Edwards, 2006 WL 845645, at *2-3 (holding

2  that erroneous information regarding petitioner's gang affiliation does not warrant expungement).

3  Accordingly, petitioner has failed to state a cognizable claim for federal habeas relief in this

4  regard.

5         For all the reasons discussed above, petitioner has no tenable claim for relief on

6  the grounds alleged and therefore dismissal of the pending habeas petition should be without

7  leave to amend.  Jarvis, 440 F.2d at 14.

8  **CONCLUSION**

9         For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

10       1.  Respondent's motion to dismiss (Doc. No. 16) be GRANTED;

11       2.  Petitioner's habeas petition be dismissed without prejudice to his pursuit of a

12  separate civil rights action with respect to his claim that his procedural due process rights were

13  violated at his second prison disciplinary hearing on July 31, 2007; and

14       3.  This case be closed

15         These findings and recommendations are submitted to the United States District

16  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

17  days after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20  shall be served and filed within seven days after service of the objections.  The parties are

21  advised that failure to file objections within the specified time may waive the right to appeal the

22  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23  DATED: March 22, 2010.

24

25  DAD:sj

   noble1221.mtd

26

                                DALE A. DROZD

                                UNITED STATES MAGISTRATE JUDGE